322-0193 Village of Bollingbrook and Illinois Home Rule Municipal Corporation Appellant v. The Metropolitan Alliance of Bollingbrook Police Officers Chapter 3 Appellee. Mr. Horvath, you may proceed. Thank you very much, Your Honor. Good morning, Justices. This matter comes before you from an underlying grievance arbitration between the Village of Bollingbrook and the Metropolitan Alliance of Police concerning benefit leave for police officers who have exhausted their one year of benefits pursuant to the Public Employee Disability Act and are on workers' compensation. I would like to first discuss why the arbitrator exceeded his authority by failing to limit his analysis and decision in accordance with Section 13.3 of the Collective Bargaining Agreement. That section specifically prevents an arbitrator who is directed to act in a judicial capacity from ignoring or nullifying any provision of the Collective Bargaining Agreement and precludes the arbitrator from adding to or modifying the agreement he is supposed to interpret it and yet this is what he did was precisely what he was not supposed to do. First, he effectively nullified Section 8.6 of the Collective Bargaining Agreement. That section incorporated the Village Rules and Regulation Manual as it related to the Village Disability Policy and what the arbitrator did was he made the specific rules in the manual at pages 60 and 79 of the manual. He made those specific rules addressing disability and workers' compensation and the benefit leaves and the benefit leave that individuals are entitled to. He made those rules subordinate to Section 16.1 of the Collective Bargaining Agreement, although that was a provision which by its very terms did not apply to workers' compensation leave. There was absolutely no reason for the arbitrator to do that. I'm confused, counsel. Yes. Didn't the arbitrator look at the specific provision in the agreement that says with regards to disability leave or accumulation of disability leave that this does not apply to workers' compensation, people on leave for workers' compensation? How is he adding or modifying to the Collective Bargaining Agreement when he is applying a specific provision? The provision he applied, Your Honor, says that it does not apply to workman's compensation leave or to extended leaves of up to three months. That's Section 16.1 under general leave and it says it does not apply to workman's compensation leave. It has no application whatsoever. The section that applies, Your Honor, is Section 8.6 which references and incorporates the rules and regulations of the Village of Bolingbroke as they relate to leave for employees on workers' compensation. Those rules make no mention whatsoever of continuing accrual of leave. What they say is how an employee can use what they have accrued prior to going on workers' compensation and they specifically say that there will be no additional accrual. That is at page 79 of the manual and that would be, if I may, that's at page 671 of the record where they basically indicate that there's no additional accrual for salary, sick leave, vacation leave, or holiday leave. The arbitrator subordinated those rules which are actually part of the contract, pursuant to Section 8.6, subordinated those rules to Section 16.1 which by its very terms has nothing to do with workers' compensation. And even in his decision, the arbitrator acknowledged that fact when he stated that it does not apply to workers' compensation. But then he turned around and applied it. And I also want to point out, Your Honor, or to the entire panel, 16.1 which the arbitrator relied on was never once mentioned during the actual hearing itself. It was not mentioned by any witness. It was not mentioned by counsel. It was not presented to the arbitrator. And because of the nature of an arbitration proceeding, the village had no briefs. And while the hearing was kept open until closing briefs were presented, that section of the collective bargaining agreement was never presented until the union presented its closing brief. So we didn't have an opportunity during the course of the arbitration hearing to even discuss that section. But had we, we would have argued the same thing that I'm presenting to you today, and that is, by its terms, Section 16.1 says it does not apply to workmen's compensation leave or extended leaves of up to three months. Mr. Horvath, I may explain my ignorance about arbitration, but so you're saying in effect the first time you were apprised of this section and argument as to the applicability of this section or whatever was when the appellee presented it in closing brief, is that correct? That is correct, your honor. Okay, now in arbitration proceedings, is there any opportunity to reopen a closing brief or to amend the closing brief? Your honor, to my knowledge, there is no opportunity and there is nothing in the collective bargaining agreement which addresses that. The arbitrator conceivably could accept an opportunity or a request to reopen, but there's nothing in the for certain. There's nothing in our collective bargaining agreement to that effect. Well, but the bargaining agreement incorporates the Arbitration Act, does it not? Yes, it does. So, it would be logically whatever the rules and procedures or acceptable practice in applying the Arbitration Act. I mean, I would argue that, but I don't know, so that's why I asked the question. It's the best answer I can provide to you, your honor. Fair enough. Counsel, I'm also troubled by our limited scope of review. I just listened very carefully to your argument and what you're telling me is that the arbitrator misconstrued the contract. If he misconstrued the contract, aren't we just stuck with his miscarriage, his mistake because we have such a narrow scope of review? I understand, your honor, that the review is incredibly narrow. However, he didn't just misconstrue the contract. He essentially eliminated the provision of the contract, which refers to what will happen with respect to disability. He eliminated that. He subordinated it and then applied a section of the contract, which had nothing to do with workers' compensation. So, the contract limits his authority and said that he can't ignore things. He can't add things. He can't modify. He eliminated the one provision that refers to disability and replaced it with another provision that said nothing about disability. It excluded workers' compensation. So, that indicates that he exceeded his authority and when an arbitrator does go beyond the scope of the agreement, then a court can vacate the decision because the agreement does not draw its essence or the decision does not draw its essence from the agreement. Excuse me. Basically, the arbitrator, there's no route, what's referred to as no interpretive route to the award looking at the contract itself. Here, there's nothing in section 16.1 that says anything about benefit leave for officers who have exhausted their benefits under PETA or the Public Employee Regulations that are incorporated by section 8.6 of the Collective Bargaining Agreement. And those rules and regulations tell us what benefits are available, the two-thirds pay, the ability to supplement your workers' compensation benefit with whatever you have accrued in the form of other benefits, and what will happen if it is determined if you are permanently disabled. The rules also state that there will be no additional accrual of vacation, sick leave, and holiday leave. And I'm not going to when we focused at the hearing, we focused on what the rules allowed. We did not focus specifically on page 79 of the rules, which say what you are not entitled to. But those rules are part of the manual, which is incorporated into the Collective Bargaining Agreement as it relates to disability. Did that answer your question, Your Honor? Not really. What is an issue here? Is the issue here the accrual of additional benefits while someone is on workers' compensation? The issue is that the arbitrator created benefits with respect to leave for an individual on workers' compensation where there are additional benefits. The benefits that are allowed are included in the manual at page 645 and, excuse me, are included in the employee manual at page 652. Those are the benefits that are allowed. And there's no mention whatsoever of additional sick leave, additional vacation leave, or additional holiday leave. At page 671 of the record, there is an expression that there will be no sick leave accrued while an employee is on extended leave, including workers' compensation. There will be no holiday leave and no vacation leave. Those are the provisions of the employee policy manual that were in effect and are still in effect. What the arbitrator did was ignore those rules, which he had in evidence. Those were in evidence. He ignored those rules and literally created benefits for employees who have exhausted their one year of PETA leave and are then on workers' compensation. What is the purpose of 16.1 of Article 16 in the CBA? The language, in no case shall benefits accrue to a police officer while on extended leave, but blah, blah, blah, but does not apply to workers' comp leave. That is for an officer who is absent without pay initially. And for the first 30 days, they will not lose benefits. But nothing accrues if they are absent without pay and on an extended leave. But then included in that clause is it says it applies to unpaid leaves of absence. It does not apply to workers' compensation leave or to extended leaves of up to three months. And then in paren, it says when an employee covered by this agreement is utilizing accrued leave, compensatory time, vacation time, and or holidays in order to maintain their income. Essentially, your honor, it is intended to address unpaid leave of absence, not workers' compensation. Your time has expired. Thank you. Thank you, your honor. Mr. Gaw, you may respond. Good morning, justices, counsel. May it please the court. My name is John Gaw, GAW, attorney for the Appellee Metropolitan Alliance of Police. At the onset, I would like to point out that in no way did the arbitrator modify the contract. He did not create a new benefit. He reinstated the benefits that the village wrongfully took away in 2018. There are three points that I would like to make before you today. One is the extremely deferential standard of review. Labor arbitration awards are not reviewable for error. Scope of authority. Arbitrator Cohen acted within the scope of his authority, and he interpreted the matter presented to him. And three, the village has shifted arguments and claims based on error, not on scope. With respect to the standard of review, the village argues de novo should be the standard based on the Chicago FOP 2010 opinion. And I will concede the scope of authority is a legal question which should be reviewed de novo. However, the de novo standard should apply only to determining the scope of authority. The Illinois Supreme Court has consistently held that the review of labor arbitration awards is extremely limited. Most recently, on the Grigsville Perry case in 2013, the court explained, it is not enough to show that the arbitrator committed an error or even a serious error. It must be shown that there is no interpretive route to the award. And that was Grigsville Perry at 20. That holding is not new. The Illinois Supreme Court has held this position consistently over time. In the 1996 AFSCME decision, the court explained, as long as the arbitrator acts within the scope of his or her authority, and the award draws its essence from the party's collective collective bargaining agreement, it must be upheld. That's AFSCME at 305. In this case, arbitrator Cohen's decision should only be reviewed to determine if he acted within the scope of his authority and if his decision drew its essence from the agreement. The arbitrator's interpretation of what the contract means, which sections are applicable, and any findings of fact should not be disturbed. With respect to scope of authority, the scope of an arbitrator's authority is that which the parties give. The Illinois Supreme Court explained, an arbitrator exceeds the scope of his power when he decides matters which were not submitted for his resolution. That's the Board of Trustees of Community College District 508 at 419. In the instant case, the party stood in front of arbitrator Cohen and asked him to settle their dispute. We jointly submitted the grievances on benefit time accrual. We submitted the contract, the policy manual, and all of the evidence now in the record. We asked the arbitrator to render a decision on benefit time accrual under the contract. That was the scope of his authority. Mr. Gaugh, can you address then the issue under the scope of authority, whether or not the reinstatement of the benefits that you indicated had been taken away in 2018, the reinstatement of those, was that considered part of his authority as part of this arbitration? Yes, your honor. Yes, your honor, because the reinstatement was made based on the fact that the contract provides for that accrual. But you're considering it part of the accrual argument, not the reinstatement issue, whether it should have been reinstated or not? I guess my question, let me rephrase it to make a little bit easier then. You believe that it is the, it was within the scope of the authority of the arbitrator to make that determination to reinstate benefits that you believe were wrongfully terminated in 2018? Yes, your honor, we believe that was within a scope. Okay, thank you. A legal presumption, there is a legal presumption concerning scope of authority. This court has previously held that a legal presumption exists that an arbitrator did not exceed his authority in making his decisions. That's County of Tazewell versus FOP at 13. In the incident case, the presumption, the appellant has presented no evidence to show that the arbitrator decided any matter not submitted to him. Like most arbitrators, arbitrator Cohen asked the parties to state the issues, discussed them, and framed the issues presented in writing. It's important to note that the appellant has never challenged the arbitrator's statement of the issue. Instead, the appellant challenges the decision made and the reasons for making it. With respect to remedy and scope, the Chicago FOP case, which was cited by the appellant, deals with scope of authority. That case dealt with the application of punitive damages as a remedy when the CBA did not provide for punitive awards. That would be an example of what the court would consider outside the scope of authority. However, ultimately, the court upheld that award because it reasoned the arbitrator's intent was remedial and not punitive. In contrast, the remedy in the case of the Chicago FOP case, which was cited by the appellant, deals with scope of authority. Arbitrators Cohen's award ordered the village of Bolingbrook to apply the contract benefits in the same way that they were applied prior to 2018 and to do so until the parties bargained for any future changes. This is one of the most common remedies we see in labor law and as well within the scope of the arbitrator's authority. The appellant claims involve claims of error, not the scope of authority. Amongst their claims, they claim that the arbitrator exceeded his ignoring Section 8.6. This is untrue. The arbitrator cited Section 8.6 in his award, record page C743. He discussed it on page C745 and 746. He determined what parts of Section 8.6 applied for contract purposes, and that was within his scope because that's what we submitted for a decision. Just because the village did not like the outcome does not mean that that section was approved. The village claims that the arbitrator ignored the extended leave policy on page 79 of the policy manual, but that's not true. The arbitrator cited and discussed that within his award and found that contract provision prevail over the section of the policy. And I must add, at no time during the hearing did counsel ever mention page 79. He didn't mention that until it came up in the closing briefs. More importantly, he testified to the other claim is that the arbitrator modified Section 16.1, and that is not true because the language was not changed. The CBA is the same as it existed before. He actually addressed 16.1 in his award at record page 746. He did not apply a new benefit as the village claimed. He reinstated the prior benefit that the village wrongfully took away. All of these things were submitted to the arbitrator in reference to this dispute. All of these things were within his authority. I understand the village is out unhappy with the outcome, but that's not a claim of error, or that's a claim of error. It's not a claim of scope. The village claimed that a past practice was incorporated. That's not true. The arbitrator looked at how the parties previously applied the contract benefits prior to 2018 for interpretation. That's looking at the prior course of dealings, which is a common practice in contract interpretation. It's even noted in Section 223 of the restatement second of contracts. When we look at the arbitration award on its face, arbitrator Cohen's award drew its essence from the collective bargaining agreement. He states the issues submitted by the parties at page 740. He cites and discusses all of the relevant contract provisions that we argued. It cites and discusses the policy manual provisions that the employer has presented, and he gave a contract-based reason for his conclusion. His remedy in restoring the status quo ante also drew its essence from the collective bargaining award. I should point out that the village never sought to change or modify this award, even though the arbitrator retained jurisdiction for 60 days. They never sought any action under Section 9 or 13 of the Uniform Arbitration Act to change or modify the award. Instead, they seek to vacate it entirely and ask for a ruling in their favor. The village has also made some shifting arguments that I think are very important here. In 2018, the village took away the benefit accrual based on their interpretation of the Public Employee Disability Act with no mention of village policy. That's at record page 580. At the arbitration hearing, village manager Ken Teppel testified that in 2018 there was no policy on benefit accrual within the policy manual, and that was why he went to village attorney Bone with the issue. That's at record page 75. At hearing, village attorney Horvath told the arbitrator that only page 60 of the policy manual was applicable. He told the arbitrator, quote, that is the sum and agreement. It's at page 60, end quote. That's at record C49. When he was questioned further by the arbitrator, attorney Horvath stated, quote, there is no other policy in effect. That is the village position. There is no written policy, no clear mutually accepted written policy, end quote. That's at record page C49, transcript page 23. Today, the village is standing before you and is a clear policy that it now includes additional policy pages from page 79 of their personnel manual, and that these provisions are so clear that you should vacate a final and binding arbitration award. We believe these facts undermine the credibility of the village's argument. Lastly, I would like to point to section 14L of the Illinois Public Labor Relations Act because it precludes an employer from making unilateral changes to benefits during the pendency of an arbitration. The village has argued in briefs that this provision can only be addressed in a ULP, an unfair labor practice. We disagree. While that may be one avenue to seek a remedy, the grievance process is also available. This is because it involves contract benefits and because section 8 of the Illinois Public Labor Relations Act provides for grievance arbitrations of all disputes under the CBA unless agreed otherwise. This matter could and should be resolved. In conclusion, the burden to set aside a final binding labor arbitration award is a high burden. I respectfully request the court to affirm the decision of the Circuit Court of Will County and to confirm the arbitrator's award. Any questions from the panel or the court? No. No. Okay. Very well. Mr. Horvath, you may reply. Thank you, Your Honor. First and foremost, I did not testify at the arbitration hearing. I did make an opening statement at the arbitration hearing, and at that point in time, I referenced the benefits that are extended to employees on workers' compensation. Those are at record 6652, and that page is explicit, and it only addresses the fact that the employees will, in fact, be paid for the first three days of injury at their entire full salary. Once eligible for workers' compensation, they will be paid two-thirds of their salary. It then goes on to say those employees may use accrued sick leave to make up the difference between workers' compensation benefits and base salary, and it says it may be utilized for this purpose and it will be charged against their bank. It then goes on at the end of that same page to address what would happen if an employee receives a duty-related disability. It tells them at that point that they can receive a lump-sum compensation for 100 percent of their unaccrued sick leave, and it says if they leave employment due to a disability, they shall receive a lump-sum compensation for 100 percent of accrued and unused vacation and holiday time up to the time of injury or illness. Those are the benefits available to employees on workers' compensation. I pointed out to this panel in our original presentation that I did not raise the provisions that are on page 79 of the manual, record C671. I pointed that out because I did not. However, those provisions do apply and do preclude accrual of leave. I also want to point out the village did not change anything in the bargaining agreement. The language in the predecessor agreement, exhibit number one in evidence of the arbitration, which was the contract that expired in April of 2018, is exactly the same as the current contract. There is no difference as it relates to the incorporation of the village's disability policy and the manual itself. I will read just one sentence from the arbitrator's decision, which emphasizes the point I am trying to make. He read a section of the contract that had no applicability and utilized it to add the benefits for sick, holiday, and vacation to employees on workers' compensation. This is at page C746 of record. It is the second to last page of his decision. He says there is initially a conflict between the contractual and manual definitions of an extended leave where there is no benefit accrual. The section 16.1 contract language explicitly excludes workers' compensation leave. He wrote on his own and created a benefit, a group of benefits for vacation, sick, and holiday leave that do not exist in the contract as it relates to employees on workers' compensation. I also cannot point to any provision in the contract that says employees who have exhausted their benefits under the Public Employee Disability Act and are on workers' compensation accrue any additional leave. He did not do that in the hearing, and he did not do that today. The contract is clear. It incorporates the disability policy. The disability policy says what employees receive, which I have expressed to you, and it does not allow for the approval of additional benefits. We respectfully ask that this court vacate the decision of the arbitrator, reverse the decision of the circuit court, and rule in favor of the village on the two grievances that were presented. Thank you.